IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| PATRICK ORLANDO BALLARD, § | |
| # 654049 § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-177 |
| § | |
| § | |
| NATHANIEL QUARTERMAN, § | |
| DIRECTOR OF TDCJ-CID[1] § | |

## REPORT AND RECOMMENDATION

Before the Court is the Petition for a Writ of Habeas Corpus of Patrick Orlando Ballard, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") (Instrument No. 1). Respondent filed a Motion for Summary Judgment with Brief in Support seeking the dismissal of Petitioner's writ. (Instrument No. 13). Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254.[2] The State has custody of Petitioner pursuant to a judgment and sentence entered by the 23rd District Court of Brazoria County, Texas in Cause No. 41,372. Petitioner was indicted for

---

[1] The previous named Respondent in this action was Doug Dretke. Effective June 1, 2006, Nathaniel Quarterman succeeded Doug Dretke as Director of the TDCJ-CID and, under Rule 25(d)(1) of the Federal Rules of Civil Procedure, is automatically substituted as a party.

[2] Petitioner is incarcerated at the McConnell Plantation Unit, which is located in Beeville, Texas, but he was convicted in Brazoria County and, thus, his Petition is within the jurisdiction of the Southern District of Texas. *See Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

1

possession of a prohibited substance in a correctional facility. The indictment also contained six enhancement paragraphs for prior felony convictions. (State Record ("S.R.") at 3). Petitioner elected to have a jury assess his punishment. (S.R. at 37). Before a jury, Petitioner pled guilty to the offense of possession, but "not true" to the enhancements. (Trial Transcript ("T.T.") Vol. 5 at 5:18-25). The jury found Petitioner guilty and found all six enhancement paragraphs "true." On August 7, 2002, the jury assessed Petitioner's punishment at 28 years confinement. (T.T., Vol. 6 at 46:4-14; S.R. at 5-6). In accordance with Article 42.08(b) of the Texas Code of Criminal Procedure,[3] Petitioner's sentence was ordered to be served consecutively or "stacked" with the conviction he was serving in Cause No. 92CR717H. (S.R. at 6).

Petitioner filed a notice of appeal and was appointed counsel. *Ballard v. State*, No. 01-02-01158-CR [Tex.App–Houston [1st Dist.], February 19, 2004). After reviewing the record, appellate counsel filed an *Anders* brief. However, appellate counsel did advise Petitioner how he could proceed if he chose to present an appeal on his own behalf and the court of appeals gave Petitioner ample time to do so. Petitioner filed a timely *pro se* appellate brief in which he alleged that his guilty plea was involuntary due to erroneous advice from trial counsel. The court of appeals affirmed Petitioner's conviction on February 19, 2004. Petitioner filed a Petition for Discretionary Review ("PDR"), but the Texas Court of Criminal Appeals denied the request for review on October 20, 2004. *Ballard v. State*, PDR No. 0922-04.

---

[3] The statute provides that "[i]f a defendant is sentenced for an offense committed while the defendant was an inmate in the institutional division of the Texas Department of Criminal Justice and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense."

On August 3, 2005, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure. The state court reviewed Petitioner's state writ claims and submitted findings of fact and conclusions of law to the Texas Court of Criminal Appeals ("TCCA"). The TCCA denied Petitioner's state writ without written order on November 30, 2005. *Ex parte Ballard*, WR-63,364-01.

Petitioner filed the instant writ on March 9, 2006. In his federal writ Petitioner alleges that his plea agreement was involuntary because of trial counsel's erroneous advice, and that due to a conflict of interest he received ineffective assistance of counsel at trial and on appeal. The Court will address each issue in turn.

Involuntary Plea & Issue

Petitioner claims his guilty plea was involuntary because his attorney erroneously told him that his prior admission of guilt at his prison disciplinary hearing would be admissible at trial and that any sentence he received would run concurrent with his existing sentence. (Fed. Writ Pet. at 7, 7a).

Initially, the Court observes that Petitioner raised this issue on appeal and also in his state habeas writ. *Ballard v. State*, at 5; *Ex parte Ballard*, WR-63,364-01. When reviewing a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the prisoner can only overcome that presumption through clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Conclusory statements do not raise a constitutional issue in a habeas case. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Such claims should be dismissed when nothing in the record supports them. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

To meet constitutional requirements, a defendant's plea must be made with an understanding of the nature of the charges against him and the consequences of his plea. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1389 (5th Cir. 1995). A defendant is considered to be fully aware of the consequences of his plea when he understands the length of time he might serve. *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993). Formal plea declarations in open court carry a strong presumption of truth, and petitioners attacking such pleas must meet a heavy burden of proof. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).

In the instant case, Petitioner signed an affidavit that clearly and explicitly stated that the trial judge had informed him of the range of punishment for possession of a controlled substance in a correctional facility, the range of punishment for habitual offenders, that he waived a reading of the indictment, and that he was voluntarily pleading guilty to the charge against him. (S.R. at 31-37). The record also shows that in open court the judge explained to Petitioner the potential punishment range if the enhancement paragraphs were found "true" by the jury. (T.T., Vol. 2 at 4:16 - 8:22). Petitioner stated in open court that he was voluntarily pleading guilty and that he had never been threatened or pressured to do so. (T.T., Vol. 2 at 8:9-22).

Petitioner does not allege he did not understand the nature of the charges against him, and nothing in the record suggests he pled without such an understanding. Additionally, he does not allege that he did not comprehend the punishment range for a habitual offender. Instead, he claims that his plea was the result of being misinformed by his attorney that his prior admission of guilt at the disciplinary hearing would be admissible and that any sentence he received would run concurrent with the sentence he was then serving. In partial support of his claim, Petitioner refers to the following exchange, which occurred at his pretrial hearing:

4

> DEFENSE COUNSEL: And do you also understand that any sentence you receive in this case is going to be, by law concurrent [sic] with the sentence that you're already serving?
>
> DEFENDANT: Correct; I understand.

(T.T., Vol. 2 at 11:25 - 12:1-4).

A close review of the record in this case does not support Petitioner's claim that any such misstatement induced his guilty plea. Rather, the evidence in the record points to the contrary. First, the misstatement by defense counsel occurred *after* Petitioner voluntarily entered a plea of guilty and *after* the trial court properly admonished him before accepting his plea of guilty. (T.T., Vol. 2 at 4:19 - 8:22).

Second, in response to Petitioner's claims in his state writ, trial counsel provided a lengthy affidavit, relied upon by the state court in making its findings and conclusions, in which counsel states, in relevant parts, the following:

> As a trial section attorney, my duties include representing Texas prison inmates charged with committing new penal code violations while incarcerated in the Texas Department of Criminal Justice. The trial section at SCFO is the section that performs this function. It is similar to a public defender's office for prison inmates.
>
> When files are opened at State Counsel for Offenders, a letter is sent to the defendant along with a list of information given all trial section clients. That list clearly states that in all cases where a defendant is convicted of a felony committed while incarcerated in TDCJ, the sentence must run consecutive to the present sentence. In my discussions with Mr. Ballard, I recall discussing with him the difficulty of obtaining a not guilty verdict. I did discuss with him the evidence that the State would marshal against him. We discussed the witnesses who would testify against him and their statements. I told Mr. Ballard that his chances of winning at trial were very slim. In addition to two correctional officer witnesses, Mr. Ballard also made an incriminating statement to the investigator from TDCJ office of Inspector General. This statement appeared to

comply with the law and in my opinion was admissible against Mr. Ballard.

\*   \*   \*   \*   \*

During the course of my representation of Mr. Ballard, I laid out several options for him to consider in disposing of his case. I told him he could accept the plea offer. I also told him he could plead not guilty and have a trial. Mr. Ballard repeatedly told me that 10 years [the plea bargain offer] was too high. I told him that because his range of punishment would be 25-99 years or life, he was in a very difficult position. I remember telling him that the ten-year plea bargain was his best option. I remember telling him the prosecutor would not reduce his plea offer and that a judge would follow the law and sentence him within the range of punishment based on his prior convictions. Mr. Ballard asked if there was a way to get less than ten years punishment. I told him it was possible a jury could give him less than ten years if they did not make the findings necessary to make him a habitual felon. I told him this was called "Jury nullification.' I told him that such an occurrence is extremely rare and would take a special jury. Mr. Ballard elected to try to get a "jury nullification" verdict. I then told him I thought if he wanted to go this route that I felt he should admit his guilt to the jury and let me select a punishment jury. This was a strategic decision on my part. I felt, based on my experience, that it was more likely a jury would find his enhancements not true if he admitted guilt and showed remorse for his actions. Mr. Ballard elected to pursue this option hoping to get less than 10 years, even though I told him the outcome he wanted was extremely unlikely and exceedingly rare.

During my representation of Mr. Ballard I did not tell Mr. Ballard that his sentence would be served concurrently as Mr. Ballard alleges in his affidavit. Apparently during the plea hearing, I misspoke and said concurrently instead of consecutively. I did not tell Mr. Ballard that because he pled guilty in the disciplinary hearing he should plead guilty at trial. To the contrary, I felt I might have been able to have his statements in the disciplinary hearing suppressed by the trial court. I did tell him the statements he gave to OIG [Office of Inspector General] would be admissible against him. I do recall telling him he had little chance of an acquittal based on the evidence against him. I did not tell him that as long as his sentence did not exceed 50 years and was assessed by the jury, he would serve it concurrently. He was clearly told by me

>that any sentence he received would be served consecutively. Mr. Ballard never asked me the meaning of the word "stacked" or indicated to me that he did not know what the term meant. In fact, most people in the criminal justice system refer to consecutive sentences as "stacked" time. This is an extremely common term in the prison system.

*Ex parte Ballard* at 37-39.

Petitioner has provided no evidence to contradict his attorney's sworn testimony on the issue of how he would serve his sentences (*i.e.,* consecutively), or that if his case were tried what evidence would be excluded (*i.e.*, his statements at the disciplinary hearing), or what evidence would, in all likelihood, be admissible (*i.e.,* admission of guilt that was made to Inspector General). Moreover, this Court can find no evidence in the record to rebut the determination of the state appellate court or the findings of the state habeas court. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). The Court, therefore, **RECOMMENDS** that Respondent's Motion be **GRANTED** on the involuntary plea issue.

<u>Conflict of Interest Issue</u>

Petitioner claims counsel was ineffective due to a conflict of interest. "Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). A petitioner has the burden of showing that an actual conflict of interest adversely affected counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *United States v. Villareal*, 324 F.3d 319, 327 (5th Cir. 2003). "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty to loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client" *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). However, "[t]he mere possibility of a conflict,

7

absent some showing that the attorney actively represented conflicting interests, is not sufficient." *Cuyler*, 446 U.S. at 348. "To prevail, a defendant must identify 'some plausible defensive strategy or tactic [that] might have been pursued but was not, because of the conflict of interest.'" *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997) (*quoting Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996).

Reviewing the record in the instant case, the Court finds that defense counsel was appointed to Petitioner by the court. Tex. Code Crim. Proc. Art. 26.051(d). Defense counsel was with the State Counsel for Offenders (SCFO), but, as explained by counsel, SCFO "is not a division of the Correctional Institutions Division of TDCJ" and that "the Director of SCFO reports directly to the Texas Board of Criminal Justice." *Ex parte Ballard* at 37. "A court-appointed attorney's responsibility is to the criminal defendant he represents, not to the individual or agency that pays for his services." *Damian v. State*, 807 S.W.2d 407, 408 (Tex.App.–Houston [14th Dist.] 1991, pet. ref'd). Moreover, a conflict of interest is not inherently present simply because a defendant is represented in a criminal prosecution by an attorney receiving payment from the State for his services. *Id.*; *see also, Ferguson v. State*, No. 01-03-01313-CR, 2005 WL 913140 (Tex.App.–Houston [1 Dist.] 2005). Petitioner points to no evidence, and the Court finds none in the record, that his appointed trial counsel failed in the responsibilities owed to Petitioner or that his counsel was otherwise burdened by an actual conflict of interest. Petitioner fails to meet his burden of demonstrating an actual conflict existed so as to establish a violation of his Sixth Amendment rights. The Court therefore **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this issue.

<u>Ineffective Assistance of Appellate Counsel</u>

Petitioner appears to claim that he received ineffective assistance from appellate counsel because the attorney informed Petitioner that she could not present claims of ineffective assistance of counsel against another attorney in her office. To the extent Petitioner raises this claim, however, it is without merit.

In order to establish a claim for ineffective assistance of appellate counsel, Petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by it. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying standard set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). In doing so, he has the burden of overcoming the strong presumption that counsel's performance was effective. Appellate counsel is not required to raise baseless or unwarranted issues on appeal. *See id.* at 278. Furthermore, a petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Here, after reviewing the record, appellate counsel determined, based on her professional judgment, that no appealable issues of any merit existed and, therefore, filed an *Anders* brief with the court of appeals. Appellate counsel cannot be considered deficient for failing to raise issues on appeal that counsel believes, in her professional judgment, are without merit. *Smith v. Robbins*, 528 U.S. at 278; *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). Petitioner also fails to identify a "plausible" issue that appellate counsel might have pursued but did not because of the conflict. *Hernandez v. Johnson*, 108 F.3d at 560. Finally, even to the extent that Petitioner claims that, had counsel raised this issue on appeal, his guilty plea might have been set aside and he might have been afforded a new trial is nothing more than speculation and such conclusory statements are insufficient

to support this claim. *Schlang v. Heard*, 691 F.2d at 799. Petitioner's claim against appellate counsel is simply without merit. The Court therefore **RECOMMENDS** that the Respondent's Motion be **GRANTED** on this issue.

## CONCLUSIONS

For all the foregoing reasons, it is the **RECOMMENDATION** of this Court that Respondent's Motion for Summary Judgment (Instrument No. 13) be **GRANTED** and Petition for a Writ of Habeas Corpus of Patrick Orlando Ballard (Instrument No. 1) be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **January 5, 2007**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge", which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this ___15th___ day of December, 2006.

_____
John R. Froeschner
United States Magistrate Judge